IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DAVID WALKER,                          :
                                       :
     Plaintiff,                        :
                                       :
vs.                                    :     CIVIL ACTION 08-0530-CG-M
                                       :
BIOGISTICS, INC., and                  :
KAMBIZ POURREZAEI,                     :
                                       :
     Defendants.                       :

REPORT AND RECOMMENDATION

The Motion to Dismiss filed by Defendants (Doc. 2) has been referred for report and recommendation, under 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2.  Jurisdiction has been invoked in this Court under 28 U.S.C. § 1332.  After consideration, it is recommended that Defendants' motion be denied.

The facts, very briefly, are as follows.  Plaintiff David Walker, who resides in Baldwin County, Alabama, entered into a written agreement entitled "Management Employment Agreement" on November 23, 2004 with Defendant Biogistics, Inc., a corporation incorporated under the laws of Delaware with its principal place of business in Pennsylvania (Complaint, ¶¶ 1-2, 4).[1]  Defendant Kambiz Pourrezaei became the Chief Executive Officer of Biogistics in September 2006 (Complaint, ¶ 3).  In October 2007, after not receiving compensation, benefits, or reimbursement for expenses, Walker contacted Pourrezaei who told him that Walker would receive these payments once Biogistics received payment on

---

[1]The Complaint appears as Exhibit A to Defendants' Notice of Removal (Doc. 1).

a specified project; though Biogistics was paid, Walker was not (Complaint, ¶¶ 5-6).  Plaintiff submitted his letter of resignation on December 21, 2007, effective ten days later (Complaint, ¶ 7).

Before the resignation took effect, Pourrezaei contacted Walker and promised payment soon if he would continue to work (Complaint, ¶ 8).  When those payments did not materialize, Walker again submitted his resignation, this time on February 22, 2008, with an effective date of March 22, 2008 (Complaint, ¶¶ 8-9).

Plaintiff brought suit against the two Defendants on June 27, 2008 in the Mobile County Circuit Court, raising two claims: breach of contract and fraudulent misrepresentation (Doc. 1, ¶ 1; Complaint).  The Defendants removed this action, asserting diversity jurisdiction under 28 U.S.C. § 1332[2] (Doc. 1).  A week later, Defendants filed this Motion to Dismiss (Doc. 2);[3] Walker filed a Response (Docs. 12, 15-16) to which Defendants have Replied (Doc. 17).

The Court notes that "[w]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'"  *Grossman v.*

_____

[2]The Court notes that Plaintiff has not challenged the removal of this action or that diversity jurisdiction is proper.

[3]Defendants' Brief for this Motion also appears at Document 2. For the balance of this Report, the Court will refer to the page number of the Brief when citing Defendant's arguments and not to the Motion *per se.*

*Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).

In bringing their Motion to Dismiss, Defendants have claimed that this Court lacks *in personam* jurisdiction over them.[4]  The Court notes that the Due Process Clause preserves an individual's liberty interest in not being susceptible to the judgments of the forum in which he has created no meaningful "contacts, ties, or relations." *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945).  By mandating that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment), the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

It is well settled that physical presence in the forum state is not a prerequisite to effective service of process on a non-resident defendant.  *Milliken v. Meyer*, 311 U.S. 457 (1940).  Rather, "the constitutional touchstone" of *in personam* jurisdiction is "whether the defendant purposefully established 'minimum contacts' in the forum state."  *Burger King Corporation*

---

[4]Defendants also claimed, initially, that this Court was an improper venue for this action (Doc. 2, pp. 5-6) and that Walker had not properly served the two Defendants (Doc. 2, pp. 6-8).  Defendants have withdrawn the venue argument (Doc. 17, p. 11) and conceded that the service issue appears to be moot (Doc. 17, p. 1).

*v. Rudzewicz*, 471 U.S. 462, 474 (1985), *citing Shoe, supra*.
Moreover, "the foreseeability that is critical to due process
analysis . . . is that the defendant's conduct and connection
with the forum state are such that he should reasonably
anticipate being haled into court there." *Woodson, supra*, 444
U.S. at 297.  The "reasonable anticipation" that the Court
expects to find before approving a forum's exercise of
jurisdiction over a non-resident defendant is explained in *Hanson
v. Denckla*, 357 U.S. 235, 253 (1958):

> The unilateral activity of those who claim
> some relationship with a nonresident
> defendant cannot satisfy the requirement of
> contact with the forum state.  The
> application of that rule will vary with the
> quality and nature of the defendant's
> activity, but it is essential in each case
> that there be some act by which the defendant
> purposefully avails itself of the privilege
> of conducting activities within the forum
> state, thus invoking the benefits of its law.

The "purposeful availment" prescription assures that one
will not be required to defend himself solely as a result of
"random," "fortuitous" or "attenuated contacts." *Keeton v.
Hustler Magazine, Inc.*, 465 U.S. 770 (1984).  However,
jurisdiction has been held to be proper when the contacts
proximately result from some action by the defendant himself
which created a "substantial connection" with the forum state.
*McGee v. International Life Insurance Co.*, 355 U.S. 220, 223
(1957).  "Even a single act can support jurisdiction." *Burger
King*, 471 U.S. at 475 n.18.  Therefore, in instances where the
defendant "deliberately" has undertaken significant activities

within a state, *Keeton*, or has established "continuing
obligations" between himself and residents of the forum state,
*Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 648 (1950), he
has been held to have taken advantage of the privilege of
conducting business in the forum state, so as to be protected by
the "benefit and protections" of the forum, and therefore, the
Supreme Court has held that it is not unreasonable to require him
to defend in such forum.

Once the requisite "minimum contacts" have been established,
such contacts may be considered in light of other factors to
ascertain whether the exercise of personal jurisdiction would
comport with "fair play and substantial justice." *Shoe,* 326 U.S.
at 320.  Therefore, in "appropriate case[s]," courts may assess
"the burden on the defendant," "the forum state's interest in
adjudicating the dispute," "the plaintiff's interest in obtaining
convenient and efficient relief," "the interstate judicial
system's interest in obtaining the most resolution of
controversies," and the "shared interest of the several states in
furthering fundamental substantive social policies." *Woodson,*
444 U.S. at 292.  "These considerations sometimes serve to
establish the reasonableness of jurisdiction upon a lesser
showing of minimum contacts than would otherwise be required."
*Burger King,* 471 U.S. at 477.  The *Burger King* Court further
stated that "[w]here a defendant who purposefully has directed
his activities at forum residents seeks to defeat jurisdiction,
he must present a compelling case that the presence of some other
considerations would render jurisdiction unreasonable." *Burger*

*King*, 471 U.S. at 477.

The burden of establishing personal jurisdiction is on the Plaintiff, the party who asserts it. *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974)),[5] *overruled on other grounds*, *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-3 (1982). Where, as here, the Court considers a motion to dismiss based on the alleged lack of *in personam* jurisdiction, and takes into account only the parties' written submissions, the party asserting jurisdiction need only make a *prima facie* showing that jurisdiction exists. *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 626 (11th Cir. 1994). Moreover, each of that party's assertions of jurisdictional facts are presumed true and all factual disputes are resolved in Plaintiff's favor. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 255 (11th Cir. 1996) (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).

In maintaining that this Court has jurisdiction over this matter, Plaintiff has directed this Court's attention to *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008).[6] In

---

[5]The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[6]The Court notes Defendants' objection to Plaintiff's filing a Supplemental Response in which he made this Court aware of this case for the first time (Doc. 16). The objection arises because Plaintiff's Response to the Motion to Dismiss was to have been filed on or before October 14, 2008, instead of October 23, 2008, when it was actually filed (Doc. 17, p. 11; *cf.* Docs. 4, 16).
Defendants' objection is **NOTED**. However, in spite of Plaintiff's tardiness and failure to request the Court's permission to file the supplemental pleading, the fact remains that *Licciardello* is the law of this Circuit and this Court is bound to follow it.

6

*Licciardello*, the Eleventh Circuit Court of Appeals discussed the reasoning of the U.S. Supreme Court, in *Calder v. Jones*, 465 U.S. 783, 791 (1984), which held that it was proper for a California court to exercise jurisdiction over two Florida newspapermen in a libel action which arose out of their intentional conduct, in Florida, which was calculated to cause injuries to the plaintiff in California.  The *Licciardello* Court summarized the "*Calder* effects test for personal jurisdiction [as requiring] the commission of an intentional tort[] expressly aimed at a specific individual in the forum whose effects were suffered in the forum."  *Licciardello*, 544 U.S. at 1288.  The Eleventh Circuit Court went on to hold that the use of Florida's long-arm statute,[7] as implemented with the "*Calder* effects test," did not offend the Constitution.

In this action, the Court notes that the Defendants admit that "Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible" (Doc. 2, p. 2) (citing Ala.R.Civ.P. 4.2(b)).[8]

The claim for fraudulent misrepresentation, essentially, is that Pourrezaei promised Walker that if he would keep working for

---

[7]"The Florida 'long-arm' statute permits the state's courts to exercise jurisdiction over nonresident defendants who commit certain specific acts.  Fla.Stat. § 48.193.  For example, § (1)(b) of the statute permits a Florida court to assert jurisdiction over any person who 'commit[s] a tortious act with the State.'  Fla.Stat. § 48.193(1)(b)."  *Licciardello*, 544 F.3d at 1283.

[8]"An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States."  Ala.R.Civ.P. 4.2(b).

Biogistics that Walker would receive all of his back pay, benefits, and expenses; because of that promise, Walker kept working.  Even so, he still did not receive his due compensation.  Accepting Plaintiff's assertions as true, the Court finds that Plaintiff's claim for fraudulent misrepresentation satisfies the "*Calder* effects test" as Defendants committed an intentional tort expressly aimed at Walker in Alabama.[9]  Therefore, Plaintiff has established that Biogistics and Pourrezaei have had constitutionally significant contact with Alabama.

However, that is not the end of the discussion as a determination must still be made as to whether this Court's exercise of jurisdiction over the Defendants comports with "fair play and substantial justice."  *Shoe,* 326 U.S. at 320.  As noted earlier, in "appropriate case[s]," courts may assess "the burden on the defendant," "the forum state's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and efficient relief," "the interstate judicial system's interest in obtaining the most resolution of controversies," and the "shared interest of the several states in furthering fundamental substantive social policies."  *Woodson,* 444 U.S. at 292.

Under *Calder* and *Licciardello*, Walker is not required to go to Delaware, Pennsylvania, or any other forum to obtain a remedy.  As Alabama has laws which allow redress for fraudulent

---

[9]This report makes no finding regarding the success of this claim as it has not been asked to do so.  Such a challenge would come in the form of a Motion for Summary Judgment.

misrepresentation, *see, e.g.*, Ala. Code § 6-5-103,[10] Alabama has an obvious interest in obtaining relief for its residents. Although Defendants have the burden of defending this action in Alabama as opposed to a more readily convenient forum, this factor is outweighed by the other factors.[11]  The Court finds that the Constitution is not offended by Alabama's jurisdiction of Defendants Biogistics, Inc. and Pourrezaei on the set of facts presented in the Complaint.

In summary, it is apparent that Defendants maintain the minimum contacts with the State of Alabama as expressed in *Shoe* and further delineated in *Calder*.  Moreover, the Defendants have failed to demonstrate that this Court's exercise of jurisdiction over them would be unreasonable or unfair.  This Court finds that its exercise of jurisdiction over the Defendants, pursuant to Ala.R.Civ.P. 4.2, comports with the requirements of due process. Therefore, it is recommended that Defendants' Motion to Dismiss (Doc. 2) be denied.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of

---

[10]"Willful misrepresentation of a material fact made to induce another to act, and upon which he does act to his injury, will give a right of action."

[11]The Court has not addressed "the interstate judicial system's interest in obtaining the most resolution of controversies" or the "shared interest of the several states in furthering fundamental substantive social policies," *Woodson,* 444 U.S. at 292, but neither Party has addressed them, so neither will the Court.

court.  Failure to do so will bar a *de novo* determination by the
district judge of anything in the recommendation and will bar an
attack, on appeal, of the factual findings of the magistrate
judge.  *See* 28 U.S.C. § 636(b)(1)©; *Lewis v. Smith*, 855 F.2d 736,
738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th
Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the
findings and recommendations of the magistrate judge is set out
in more detail in SD ALA LR 72.4 (June 1, 1997), which provides
that:

> A party may object to a recommendation entered by a
> magistrate judge in a dispositive matter, that is, a
> matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing
> a "Statement of Objection to Magistrate Judge's
> Recommendation" within ten days after being served with
> a copy of the recommendation, unless a different time
> is established by order.  The statement of objection
> shall specify those portions of the recommendation to
> which objection is made and the basis for the
> objection.  The objecting party shall submit to the
> district judge, at the time of filing the objection, a
> brief setting forth the party's arguments that the
> magistrate judge's recommendation should be reviewed <u>de
> novo</u> and a different disposition made.  It is
> insufficient to submit only a copy of the original
> brief submitted to the magistrate judge, although a
> copy of the original brief may be submitted or referred
> to and incorporated into the brief in support of the
> objection.  Failure to submit a brief in support of the
> objection may be deemed an abandonment of the
> objection.

A magistrate judge's recommendation cannot be appealed to a
Court of Appeals; only the district judge's order or judgment can
be appealed.

2.   **Transcript (applicable where proceedings tape recorded)**.
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the
magistrate judge finds that the tapes and original records in
this action are adequate for purposes of review.  Any party
planning to object to this recommendation, but unable to pay the
fee for a transcript, is advised that a judicial determination
that transcription is necessary is required before the United
States will pay the cost of the transcript.

DONE this 14th day of January, 2009.


s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE